# In the United States Court of Federal Claims

No. 19-1747C
(Filed Under Seal: July 26, 2022)
(Reissued: August 9, 2022)*
**FOR PUBLICATION**

```
**************************************
DOE NO. 1,                            *
                                      *
              Plaintiff,              *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
              Defendant.              *
                                      *
**************************************
```

*Daniel M. Rosenthal*, James & Hoffman, P.C., Washington, D.C., for Plaintiff. With him on briefs were *Alice Hwang* and *Michael Ellement*, James & Hoffman, P.C., Washington, D.C., as well as *Linda Lipsett*, *Jules Bernstein*, and *Michael Bernstein*, Bernstein & Lipsett, P.C., Washington, D.C.

*Sarah E. Kramer*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With her on briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Martin F. Hockey, Jr.*, Acting Director, and *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C, as well as *Eric A. Huang* and *Monica L. Hansen*, Assistant General Counsel, Federal Bureau of Investigation, Washington, D.C.

## OPINION AND ORDER

Plaintiff[1] — an intelligence analyst with the Federal Bureau of Investigation ("FBI") — alleges that the government failed to pay him for all the time he spent outside regular working hours completing the FBI Basic Field Training Course ("BFTC"). He seeks backpay and related forms of relief under the Fair Labor

---

* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on July 26, 2022, for the parties to propose redactions of confidential or proprietary information. The parties were directed to propose redactions by August 9, 2022. The parties notified the court on August 8 that there were no proposed redactions. The Court hereby releases publicly the opinion and order of July 26 in full.

[1] This case is subject to a protective order to avoid disclosing Plaintiff's identity. *See* Protective Order (ECF 6); Amended Protective Order (ECF 53).

Standards Act ("FLSA") and other statutes. Defendant's motion for summary judgment is ripe for decision.[2] But because Defendant has failed to establish that it is entitled to judgment as a matter of law, the motion is **DENIED**.

## BACKGROUND

The following facts are undisputed. Plaintiff is an employee of the FBI. Doe No. 1 Decl. ¶ 3 (ECF 54-1). In 2018, Plaintiff transferred within the FBI to his position as an intelligence analyst. *Id.* ¶¶ 3–4. To become an intelligence analyst, Plaintiff had to meet certain standards and requirements, one of which was completing the BFTC. *Id.* ¶¶ 5–7, 19–20; Def.'s App'x at 32–33 (ECF 48-1). Plaintiff began the BFTC on the day of his job transfer. Doe No. 1 Decl. ¶¶ 4, 7.

The BFTC is a training program for new FBI agents and intelligence analysts. Def.'s App'x at 32; Doe No. 1 Decl. ¶¶ 9–10, 20. Besides in-person training sessions, the course required Plaintiff to complete various assessments and "to study materials, work on team projects, write reports and other training documents, prepare briefings, and prepare for and perform interviews[.]" Doe No. 1 Decl. ¶ 21; Def.'s App'x at 5, 33–34. Some of that activity was scheduled outside working hours or had to be completed on Plaintiff's own time. Doe No. 1 Decl. ¶ 21. Plaintiff claims that although he worked more than 8 hours per day and 40 hours per week during the BFTC, he was not compensated for all overtime hours. *Id.*

Defendant moved to dismiss on the ground that BFTC participants are entry-level trainees and therefore ineligible for the overtime compensation under 5 C.F.R. § 551.423(a)(3). *See* Motion to Dismiss (ECF 23). The judge previously assigned to the case converted the motion to a motion for summary judgment, *see* Scheduling Order (ECF 40), and the case was reassigned to me, Order (ECF 44).

After summary judgment briefing was complete, I denied a motion to dismiss based on 5 C.F.R. § 551.423(a)(3) in *Plaintiff No. 1 v. United States*, a similar case involving the Department of Defense Counterintelligence Agent Course. 154 Fed. Cl. 95 (2021). I held in *Plaintiff No. 1* that Section 551.423(a)(3) was potentially invalid, though I reserved the question of whether the government could eventually provide evidence or argument sufficient to justify reliance on it. *Id.* at 105. After hearing oral argument on the motion for summary judgment in this case, I ordered supplemental

---

[2] Compl. (ECF 1); Def.'s Mot. for Sum. J. (ECF 48) ("Def.'s Mot."); Pl.'s Opp. to the Govt.'s Mot. for Sum J. (ECF 54) ("Pl.'s Opp."); Def.'s Reply in Supp. of Its Mot. for Sum. J. (ECF 59) ("Def.'s Reply"). I held oral argument on Defendant's Motion on August 18, 2021, Tr. of Oral Arg. (ECF 64) ("Tr."), and ordered the parties to file supplemental briefing, Order (ECF 60); *see* Def.'s Suppl. Br. (ECF 65); Pl.'s Suppl. Br. in Resp. to the Govt.'s Mot. for Sum J. (ECF 66) ("Pl.'s Suppl. Br.").

briefing to address (1) the issue reserved in *Plaintiff No. 1*, and (2) the legal standard applicable in this case if Section 551.423(a)(3) is invalid. Order (ECF 60).

## DISCUSSION

### I.   Jurisdiction

The United States Court of Federal Claims has jurisdiction under the Tucker Act to adjudicate "any claim against the United States founded … upon … any Act of Congress or any regulation of an executive department … in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Because the Tucker Act is "a jurisdictional statute [that] does not create any substantive right enforceable against the United States for money damages," *United States v. Testan*, 424 U.S. 392, 398 (1976) (citing *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605–07 (1967)), parties asserting Tucker Act jurisdiction must "identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). That requires a "money-mandating" source of law, *i.e.*, a statute or regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained and is reasonably amenable to the reading that it mandates a right of recovery in damages." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quotes and citations omitted) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)).

FLSA is a money-mandating source of law. *See Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014) ("As the courts have held … for three decades, since soon after the FLSA was extended to the federal government …, the Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA.") (citation omitted). It is undisputed that Plaintiff is a government employee bringing FLSA claims for overtime compensation, Compl. ¶¶ 1, 5; Def.'s Mot. at 1; Doe No. 1 Decl. ¶ 3, so this Court has jurisdiction to adjudicate his money-mandating claims.

Statutes of limitations in this Court are uniquely jurisdictional, requiring *sua sponte* consideration. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008). FLSA provides a general two-year statute of limitations for violations of overtime payment provisions, and a three-year limitations period for willful violations. 29 U.S.C. § 255(a). A claim accrues when "all the events which fix the Government's alleged liability have occurred and the Plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis omitted). "As a general rule, 'a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not

paid.'" *Udvari v. United States*, 28 Fed. Cl. 137, 139 (1993) (quoting *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988)).

Plaintiff began the BFTC on January 7, 2018, and completed it on April 4, 2018. Doe No. 1 Decl. ¶ 7. He filed his complaint on November 12, 2019, less than two years later. *See* Compl. His claims are therefore within the limitations period, regardless of whether the alleged violations were willful.

## II.  Merits

Defendant argues, as in its motion to dismiss, that summary judgment should be granted because the BFTC is "entry-level training," which would mean that training time outside regular working hours does not count as "hours of work" and cannot be compensated as overtime. Def.'s Mot. at 10–13; Def.'s Reply at 11–16. As before, Defendant cites 5 C.F.R. § 551.423(a)(3). But the regulation still does not appear to be valid under the applicable standard — even after Defendant's opportunity for supplemental briefing — and Defendant therefore cannot rely upon it. Whether Plaintiff is entitled to compensation depends, rather, on FLSA and regulatory standards that the parties have not adequately briefed.[3]

### A.  Legal Standards

Under FLSA, "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). That overtime compensation requirement applies not only to work directed by the employer, but work that the employer "suffer[s] or permit[s]." *Id.* § 203(g).

Originally, FLSA exempted federal employees, who were covered instead by separate civil service overtime laws. *Billings v. United States*, 322 F.3d 1328, 1333 (Fed. Cir. 2003). When Congress later extended FLSA to federal employees, *see* Fair Labor Standards Amendments of 1974, Pub. L. No. 93–259, 88 Stat. 55 (1974) (codified in relevant part at 29 U.S.C. § 203(e)(2)(A)), it preserved the parallel regulatory frameworks for federal and non-federal employees. The Department of Labor ("DOL") would continue to administer FLSA with respect to private, State, and local government employees and employers. *See* 29 U.S.C. § 204(a); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 137–38 (1944); *Dufrene v. Browning-Ferris, Inc.*, 207

---

[3] A large portion of the parties' briefing addresses whether the BFTC is in fact "entry-level training," Def.'s Mot. at 11–13; Pl.'s Opp. at 10–17; Def.'s Reply at 11–14, and whether Plaintiff's employment was "probationary," Def.'s Mot. at 10–11, 17–20; Pl.'s Opp. at 17–21; Def.'s Reply at 15–16. I need not reach those issues of fact and law — or even determine their relevance — until the parties address them under the correct legal standard.

F.3d 264, 267 (5th Cir. 2000); *Condo v. Sysco Corp.*, 1 F.3d 599, 604 (7th Cir. 1993). The Office of Personnel Management ("OPM") now administers FLSA for most covered federal employees and employers. *See* 29 U.S.C. § 204(f) (providing that, with certain exceptions, "the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States"); *see also* 5 C.F.R. §§ 551.102(a), 551.103.

In response to concerns that extending FLSA to federal employees would "confuse administration" of FLSA and the civil service laws, *Billings*, 322 F.3d at 1333, Congress charged OPM with administering FLSA "consisten[tly] with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." *Id.* (quoting H.R. Rep. No. 93-913, at 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837–38); *Zumerling v. Devine*, 769 F.2d 745, 750 (Fed. Cir. 1985); *Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.*, 821 F.2d 761, 769, 770 (D.C. Cir. 1987); *see also* 5 C.F.R. § 551.101(c). When OPM's regulations are inconsistent with DOL's, a court must "determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Billings*, 322 F.3d at 1334.[4] If the government cannot justify a deviation from DOL's regulations, then the OPM regulation is invalid. *See Am. Fed'n of Gov't Emps.*, 821 F.2d at 771.

To prevail on a motion for summary judgment, the moving party must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact must "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[5] As such, factual disputes with no bearing on the resolution of the suit

---

[4] The rule of consistency between OPM and DOL regulations does not appear in FLSA or its statutory amendments. It comes from a House committee report. *See Riggs v. United States*, 21 Cl. Ct. 664, 681 (1990). The significance of committee reports for statutory interpretation is a matter of intense debate. *Compare* Robert A. Katzmann, *Judging Statutes* 38 (2014) (referring to committee reports as "authoritative" legislative history that should inform courts' interpretation of statutes), *with* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2122–24 (2016), *and* John F. Manning, *Why Does Congress Vote on Some Texts but Not Others?*, 51 Tulsa L. Rev. 559, 565–70 (2016). But there is no occasion to sort out that question here. *Billings* adopted the House committee's standard for the validity of OPM regulations, *Billings*, 322 F.3d at 1334, and that holding binds this Court even if the legislative history otherwise would not. *See Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005).

[5] *Kraft, Inc. v. United States*, 85 F.3d 602, 605 n.6 (Fed. Cir.) ("The precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims."), *modified on denial of reh'g*, 96 F.3d 1428 (Fed. Cir. 1996).

are not material. *Id.* When considering a motion for summary judgment under RCFC 56(a), the Court "must … view[] [all evidence] in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

### B. Section 551.423(a)(3) Impermissibly Departs from DOL Regulations

OPM has provided that — subject to exceptions the parties do not claim are relevant here — "[t]ime spent in … entry level training … outside regular working hours shall not be considered hours of work, provided no productive work is performed during such periods[.]" 5 C.F.R. § 551.423(a)(3); *see also* 5 C.F.R. § 410.402(d) (providing that Section 551.423 "govern[s] overtime pay for employees covered by [FLSA] during training, education, lectures, or conferences").[6] Defendant claims that because BFTC is entry-level training, time spent on the course outside regular working hours does not count as compensable hours of work. Def.'s Mot. at 10–13; Def.'s Reply at 11–16. Plaintiff responds that Section 551.423(a)(3) is inconsistent with DOL regulations on compensation for training and is therefore invalid. Pl.'s Opp. at 13–17.

As I explained in *Plaintiff No. 1*, "[n]o similarly broad exception for entry-level training seems to exist in DOL regulations." 154 Fed. Cl. at 105. "Instead, DOL has exceptions for 'bona fide apprenticeship programs,' *see* 29 C.F.R. § 785.32, and outside-working-hours training by State and local government employees when required by law to obtain a certification, *see* 29 C.F.R. § 553.226(b)." *Id.* Because "DOL's exceptions are distinctly narrower than the OPM exception," Section 551.423(a)(3)'s rule against compensation for entry-level training activities outside working hours is inconsistent with DOL's interpretations of FLSA. *Id.* (citing *Am. Fed'n of Gov't Emps.*, 821 F.2d at 771 (holding that another OPM regulation was inconsistent with DOL's because it defined a FLSA exemption more broadly)).

Because of that departure, the OPM regulation is valid only if it is "reasonable" and "required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Billings*, 322 F.3d at 1334; *Adams v. United States*, 40 Fed. Cl. 303, 307 (1998) ("OPM rules may legitimately deviate from DoL rules if the government can justify a contrary practice."). Otherwise, it is invalid. *See Am. Fed'n of Gov't Emps.*, 821 F.2d 761 at 771.

---

[6] Plaintiff does not claim that BFTC overtime involved "productive work" or that the allegedly uncompensated overtime activities occurred during "regular working hours." *See* 5 C.F.R. § 551.423(a)(3).

OPM's interpretation of FLSA could be reasonable, at least in the abstract. Defendant must also explain, however, why the divergence between OPM and DOL standards is "required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Billings*, 322 F.3d at 1334. Defendant identifies two federal statutes governing federal employment, but neither justifies OPM's categorical rule for entry-level training overtime.

First, Defendant points to the Government Employees Training Act ("GETA"), which rules out overtime compensation for federal employees' training time. *See* 5 U.S.C. § 4109(a)(1) (authorizing the heads of federal agencies to "pay all or a part of the pay (except overtime, holiday, or night differential pay) of an employee of the agency selected and assigned for training under this chapter, for the period of training"); Def.'s Suppl. Br. at 3–4. OPM implemented that prohibition by rule.[7] *See* 5 C.F.R. § 410.402(a) (providing that, with certain exceptions, "an agency may not use its funds, appropriated or otherwise available, to pay premium pay to an employee engaged in training by, in, or through Government or non-government facilities"); 5 C.F.R. § 532.501 (defining "premium pay" to include overtime compensation); *see also* 5 U.S.C. § 4118(a)(8) (authorizing OPM to implement GETA's training provisions). But OPM also provided that GETA — including the prohibition on overtime for training — does not apply to federal employees covered by FLSA. *See* 5 C.F.R. § 410.402(d) ("Regulations governing overtime pay for employees covered by [FLSA] during training … are found in § 551.423 of this chapter. The prohibitions on paying premium pay … are not applicable for the purpose of paying FLSA overtime pay."). Because the parties do not dispute that Plaintiff *is* covered by FLSA, the GETA prohibition on overtime payment for training does not apply.

Defendant argues that because OPM's authorization for overtime pay under FLSA is an exception to the pre-existing statutory prohibition in GETA, it should be interpreted narrowly. Def.'s Suppl. Br. at 5–7. It is not evident what that has to do with entry-level training specifically, considering that OPM has authorized overtime compensation for other kinds of training. *See* 5 C.F.R. § 551.423(a)(2). Once OPM permits overtime for training, excluding *entry-level* training is an arbitrary deviation from FLSA. Defendant has thus failed to explain how its regulation "effectuate[s] the

---

[7] Plaintiff disagrees that GETA prohibits overtime compensation, arguing that while "GETA does not authorize such pay[,] … a lack of authorization is not the same as a prohibition." Pl's. Suppl. Br. at 5. That is not accurate: An agency "literally has no power to act ... unless and until Congress confers power upon it," so everything unauthorized is prohibited. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Plaintiff's contrary authority, *Maine Community Health Options v. United States*, holds simply that Congress can create a payment obligation by statute, without a specific appropriation. 140 S. Ct. 1308, 1319–23 (2020).

consistency of application of [relevant labor laws] to both federal and non-federal employees." *Billings*, 322 F.3d at 1334.

Even more fundamentally, Defendant's theory misunderstands the nature of rules and their exceptions. Writing an exception into a rule is simply a way of crafting the underlying rule itself, not a distinct act that needs to be treated in special ways. The presence of an exception in a text "result[s] from the often fortuitous circumstance that the language available to circumscribe a legal rule or principle is broader than the regulatory goals the rule or principle is designed to further." Frederick Schauer, *Exceptions*, 58 U. Chi. L. Rev. 871, 872 (1991). The Supreme Court has accordingly explained that an "exception" is not to be interpreted any differently than other statutory provisions. *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538–39 (2021) ("This Court has 'no license to give statutory exemptions anything but a fair reading.' … Exceptions and exemptions are no less part of Congress's work than its rules and standards — and all are worthy of a court's respect.") (quoting *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019)). Put another way, there is nothing "exceptiony" about an exception that requires reading it more narrowly or broadly than an ordinary reading of its text requires.

That means FLSA and GETA are simply different statutes with different domains, with the border between them established by regulation. *See* 5 C.F.R. § 410.402(d); *see also* Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85659, 85661 (Dec. 30, 1980) (noting "that the two laws are to be administered separately and independently"). Where FLSA applies, OPM is obligated to hew to DOL's interpretations. *See Billings*, 322 F.3d at 1333. OPM cannot depart from the DOL interpretations simply because a *different* statute with a *different* scope applies in *other* circumstances.

Second, Defendant points out that the Federal Employee Pay Comparability Act ("FEPCA") granted OPM authority to determine what counts as "hours of work" for FLSA-covered employees. Def.'s Suppl. Br. at 4–5; 5 U.S.C. § 5542(c). According to Defendant, OPM's authority to define "hours of work" is an "important difference between the Federal and private sector." *Id.* at 4.

That might have been significant if OPM had chosen to define "hours of work" to exclude Plaintiff's overtime. The problem for the government is that OPM did *not*

choose to define "hours of work" more narrowly than DOL.[8] On the contrary, when it promulgated Section 551.423(a)(3), OPM made clear its intention to *follow* DOL:

> [W]e have modified our original determination to provide that time spent in training outside regular working hours is compensable as hours of work under the FLSA if certain specific criteria are met. *This change will bring OPM's administration of the FLSA into line with that of the Department of Labor in the private sector and will produce consistency in OPM's administration of the Act*. We have modified the language in § 551.423. [*sic*] and have prepared an FPM letter to provide supplemental instructions in response to the myriad of comments received on this section.

Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. at 85661 (emphasis added). Defendant cannot retroactively justify Section 551.423(a)(3) as a departure from DOL's approach when it initially promulgated the regulation to be consistent with DOL's. *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

Even if Section 551.423(a)(3) does redefine "hours of work," Defendant has more difficulties. The point of OPM's authority to define "hours of work" is "to ensure that no employee receives less pay by reason of" application of FLSA rather than other civil service laws. 5 U.S.C. § 5542(c). The language Defendant cites, in other words, was not a delegation of authority to depart from DOL's interpretations, but a direction to treat civil service protections as a floor when applying FLSA. If anything, that underscores the importance of consistency between DOL's interpretation of FLSA and OPM's implementation of FLSA for federal employees.

In short, Section 551.423(a)(3) creates a categorical rule against overtime for entry-level training outside working hours that is not consistent with DOL's regulations, and Defendant has not justified the departure with any difference between federal and private employment. *See Billings*, 322 F.3d at 1334. The regulation is therefore invalid under the *Billings* analysis. Defendant cannot rely on Section 551.423(a)(3) to obtain dismissal of this case or to refuse to pay overtime to trainees.

## C.  Compensability of Training Under FLSA

Given that Defendant cannot rely on Section 551.423(a)(3), what is the standard for payment of overtime for training? On that score, the parties agree —

---

[8] Defendant concedes that point. Def.'s Suppl. Br. at 5 ("In response, OPM added provisions in the FLSA regulations to state that hours of work under Title 5 rules would also qualify as FLSA hours of work, but did not change the FLSA hours of work rules.").

rightly — that the Court should apply FLSA directly, Pl.'s Suppl. Br. at 9; Def.'s Suppl. Br. at 7, together with all valid and relevant OPM regulations.[9]

Section 551.423(a) reflects OPM's effort to implement FLSA's rules for training-related compensation. Leaving aside the invalid carve-out for entry-level training, the general rule for when "[t]ime spent in training outside regular working hours" can be compensated appears in Section 551.423(a)(2) — which the parties have barely mentioned. *Almanza v. United States*, 935 F.3d 1338–39. As explained in *Plaintiff No. 1*, however, that provision may not be valid either because it shifts the burden of proving compensability from the employer to the employee. 154 Fed. Cl. at 103–05.

If OPM has not validly regulated in the field, FLSA's underlying standards control. As mentioned above, FLSA requires employers to pay for their employees' work. 29 U.S.C. §§ 206(a), 207(a). The statute does not define "work," but has been held to cover "trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 151 (1947). FLSA does not, however, cover true students who "without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id.* at 152. Since *Walling*, courts have sometimes interpreted FLSA to distinguish between individuals' activities in their capacity as employees (which must be compensated as work) and their activities as students (which need not be compensated). *Ballou v. Gen. Elec. Co.*, 433 F.2d 109, 111–12 (1st Cir. 1970); *Bienkowski v. Ne. Univ.*, 285 F.3d 138, 141 (1st Cir. 2002); *Chao v. Tradesman Int'l, Inc.*, 310 F.3d 904, 910 (6th Cir. 2002); *see Almanza v. United States*, 935 F.3d 1332, 1340–41 (Fed. Cir. 2019) (finding that activities done after hours primarily for employees' learning and development are not "hours of work").[10]

Because Defendant briefed its motion under the wrong legal standard, the parties have not fully developed the correct one. Nor is it clear how the correct test applies to the facts of Plaintiff's training. I therefore cannot conclude that Defendant

---

[9] The parties also appear to agree that DOL's regulations might be persuasive authority in interpreting FLSA. Pl.'s Suppl. Br. at 10; Def.'s Suppl. Br. at 7. DOL's authority has been displaced by statute in federal employment. 29 U.S.C. § 204(f). Nor are DOL's regulations binding, even on their own terms. *See* 29 C.F.R. § 785.2. But "while not controlling upon the courts by reason of their authority," they "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140. DOL regulations might be especially persuasive if — as discussed above — OPM intended to follow them but simply miswrote its own regulations. Whether any *particular* DOL regulation is in fact persuasive can wait for further proceedings.

[10] Contrary to Defendant's argument, Def.'s Mot. at 17–20, those cases do not create a special compensation rule for training undergone by "probationary" employees, except to the extent that an individual's probationary status sheds light on whether he is an employee doing compensable work. *See, e.g., Bienkowski*, 285 F.3d at 141.

has established that there is no dispute of material fact or that Defendant is entitled to judgment as a matter of law. RCFC 56(a).

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF 48) is **DENIED**. The parties are **ORDERED** to submit a status report proposing further proceedings no later than **August 25, 2022.**

Pursuant to the Court's March 31, 2021 Amended Protective Order (ECF 53), this Opinion has been issued under seal. The transcript of the August 18, 2022 hearing is under seal as well. The parties shall have two weeks to propose redactions and, accordingly, shall file notice of their proposed redactions no later than **August 9, 2022**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum explaining why redactions are necessary for each item of information for which a redaction is proposed.

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge