# In the United States Court of Federal Claims

No. 19-1747C
(Filed: November 20, 2026)
**FOR PUBLICATION**

| | |
|---|---|
| DOE NO. 1, *et al.*, | * |
| Plaintiffs, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

*Daniel M. Rosenthal*, James & Hoffman, P.C., Washington, D.C., for Plaintiffs. With him on briefs were *Charlotte H. Schwartz* and *Michael P. Ellement*, James & Hoffman, P.C., Washington, D.C., as well as *Linda Lipsett*, Bernstein & Lipsett, P.C., Washington, D.C.

*David M. Kerr*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on briefs were *Brett A. Shumate*, Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., and *Brittany K. Hinton*, Assistant General Counsel, Employment Law Unit 1, Office of the General Counsel, Federal Bureau of Investigation, Washington, D.C.

## OPINION AND ORDER

Plaintiffs[1] — intelligence analysts with the Federal Bureau of Investigation ("FBI") — allege that the government failed to pay them for all the time they spent outside regular working hours completing the FBI Basic Field Training Course ("BFTC"). They seek backpay and related forms of relief under the Fair Labor Standards Act ("FLSA") and other statutes. After I denied the government's motion for summary judgment, *see* Op. & Order Den. Summ. J. (ECF 68), I granted its motion to certify my decision for interlocutory appeal, *see* Op. & Order (ECF 86). The Court of Appeals for the Federal Circuit ultimately vacated and remanded for further proceedings. *See Doe No. 1 v. United States*, 129 F.4th 1362 (Fed. Cir. 2025).

[1] This case is subject to a protective order to avoid disclosing the lead plaintiff's identity. *See* Order (ECF 6).

On remand, the parties have cross-moved for summary judgment.[2] After oral argument,[3] at my request, the parties filed supplemental briefs addressing Plaintiffs' standing.[4] This Court has jurisdiction. And because I conclude that factual disputes preclude summary judgment, the cross-motions are **DENIED**.

## BACKGROUND

Under FLSA, "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). That overtime compensation requirement applies not only to work directed by the employer, but work that the employer "suffer[s] or permit[s]." *Id.* § 203(g). When training counts as work, FLSA requires employers to pay employees for their time.

For federal employees, FLSA regulations implemented by the Office of Personnel Management ("OPM") provide the standard for when training time outside working hours counts as compensable hours of work. In general, the time counts — and must be paid for by the government — when "(i) The employee is directed to participate in the training by his or her employing agency; and (ii) The purpose of the training is to improve the employee's performance of the duties and responsibilities of his or her current position." 5 C.F.R. § 551.423(a)(2). But that rule has an exception: "*Time spent in apprenticeship or other entry level training*, or internship or other career related work study training, or training under the Veterans Recruitment Act … *outside regular working hours shall not be considered hours of work, provided no productive work is performed during such periods*," with exceptions not relevant here. 5 C.F.R. § 551.423(a)(3) (emphasis added).

The following facts are undisputed. Doe No. 1, the original plaintiff,[5] is an employee of the FBI. Doe No. 1 Decl. ¶ 3 (ECF 178-1). In 2018, Plaintiff Doe transferred within the FBI to her position as an intelligence analyst. *Id.* ¶¶ 3–4. To become an intelligence analyst, she had to meet certain standards and requirements, one of which was completing the BFTC. *Id.* ¶¶ 5–7, 19–20; Decl. of Chad Creasey

---

[2] *See* Def.'s Renewed Mot. for Summ. J. ("Def.'s Mot.") (ECF 176); Pls.' Opp'n to Def.'s Renewed Mot. for Summ. J. & Cross-Mot. for Partial Summ. J. ("Pls.' Mot.") (ECF 178); Def.'s Reply in Supp. of Renewed Mot. for Summ. J. & Resp. to Pls.' Cross-Mot. for Partial Summ. J. ("Def.'s Reply") (ECF 179); Pls.' Reply in Supp. of Cross-Mot. for Partial Summ. J. ("Pls.' Reply") (ECF 183).

[3] Oral Arg. Tr. ("Tr.") (ECF 186).

[4] Def.'s Suppl. Br. (ECF 187); Pls.' Suppl. Br. (ECF 188); *see* Order (ECF 184).

[5] After the Court granted Plaintiff's motion for notice under FLSA's collective action provisions, *see* Op. & Order at 6–8 (ECF 86) (granting Pl.'s Unopposed Mot. for Notice (ECF 83)); *see also* 29 U.S.C. § 216(b), other individuals similarly situated to Plaintiff Doe joined the action.

¶¶ 7, 9 (“Creasey Decl.”), *in* Def.’s App. (ECF 176-1). Plaintiff Doe began the BFTC on the day of her job transfer. Doe No. 1 Decl. ¶¶ 4, 7.

The BFTC is a training program for new FBI agents and intelligence analysts. Creasey Decl. ¶ 6; Doe No. 1 Decl. ¶¶ 9–10, 20. In addition to in-person training sessions, the course requires attendees to complete various assessments and “to study materials, work on team projects, write reports and other training documents, prepare briefings, and prepare for and perform interviews[.]” Doe No. 1 Decl. ¶ 21; Def.’s App. at 5; Creasey Decl. ¶¶ 10, 14–15. Some of those activities were scheduled outside working hours or had to be completed on Plaintiff Doe’s own time. Doe No. 1 Decl. ¶ 21. Plaintiff Doe claims that although she worked more than eight hours per day and forty hours per week during the BFTC, she was not compensated for all overtime hours. *Id.*

The government moved for summary judgment, arguing that the BFTC is “entry level training,” and that Plaintiff’s after-hours time therefore did not count as hours of work under Section 551.423(a)(3). *See* Def.’s Orig. Mot. for Summ. J. (ECF 48); *see also* Def.’s Mot. to Dismiss (ECF 23). Plaintiff responded that Section 551.423(a)(3) is inconsistent with interpretations of FLSA issued by the Department of Labor (“DOL”), and therefore invalid. Pl.’s Opp’n to Def.’s Mot. for Summ. J. at 11–13 (ECF 54); *see Billings v. United States*, 322 F.3d 1328, 1334 (Fed. Cir. 2003).

I agreed with Plaintiff. In *Billings v. United States*, the Federal Circuit wrote: “Congress has instructed that ‘[OPM] will administer [FLSA] … consisten[tly] with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy.’” 322 F.3d at 1333 (quoting Fair Labor Standards Amendments of 1974, H.R. Rep. No. 93-913, at 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837). I read *Billings* as reasoning that OPM may diverge from DOL’s rules when OPM’s position is “reasonable” and the difference is “required to effectuate the consistency of application of the provision to both federal and non-federal employees.” *Id.* at 1334. I concluded that the categorical exclusion of entry-level training was inconsistent with DOL’s interpretation and that — even if OPM’s position was reasonable on its own terms — the government had not shown the departure was required by any difference between federal and private employment. Op. & Order Den. Summ. J. at 9. The regulation was therefore invalid and could not serve as a basis for dismissing Plaintiff’s claims. *Id.*

On interlocutory appeal, the Federal Circuit vacated. *See Doe No. 1*, 129 F.4th at 1367. The circuit clarified two aspects of the *Billings* test.

First, the Federal Circuit explained what kinds of DOL action constrain OPM. The *Billings* panel quoted Congress's "instruct[ion]" that OPM would "administer" FLSA "consisten[tly] with … the rulings, regulations, interpretations, and opinions of the Secretary of Labor[.]" 322 F.3d at 1333. In this case, the Federal Circuit found "no reason to extend *Billings* to allow interpretive statements of DOL policy to invalidate an OPM regulation issued pursuant to notice-and-comment rulemaking procedures." *Doe No. 1*, 129 F.4th at 1366. The DOL positions relevant to this case were interpretive statements without the force of law. *Id.* at 1365–66 (citing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015)). Although those statements are in some sense among "the rulings, regulations, interpretations, and opinions of the Secretary of Labor," *see Billings*, 322 F.3d at 1333, they do not constrain OPM's administration of FLSA.

Second, the Federal Circuit explained how to evaluate OPM's justifications for departing from DOL's position. The *Billings* panel, in upholding OPM departures from DOL regulations, said OPM's approach was independently reasonable under FLSA and also "required to effectuate the consistency of application of the provision to both federal and non-federal employees." 322 F.3d at 1334. Put another way, OPM's "variance" from DOL's position was "no more than needed to accommodate the difference between private and public sector employment." *Id.* The Federal Circuit clarified in this case that "*Billings* requires nothing more" than that OPM regulations be "consistent with the FLSA and implement a legitimate policy choice." *Doe No. 1*, 129 F.4th at 1366; *see also id.* at 1367 (differences are valid if they "are justified by legitimate reasons"). It concluded that Section 551.423(a)(3) met that test. *Id.*

The remaining questions are whether the OPM regulation is "consistent with the FLSA," *see Doe No. 1*, 129 F.4th at 1367, and, if so, whether it rules out compensation for after-hours time spent on the BFTC. The Federal Circuit therefore remanded "for further proceedings consistent with this opinion." *Id.*

The parties proposed new cross-motions for summary judgment to address the remaining questions on remand. Those motions are now ripe for decision.

## DISCUSSION

### I. Jurisdiction

As previously held, Plaintiffs' claims are within this Court's subject-matter jurisdiction and within the statute of limitations. *See* 28 U.S.C. § 1491(a)(1); *Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014); *Udvari v. United States*, 28 Fed. Cl. 137, 139 (1993) (quoting *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988));

*see* Op. & Order Den. Summ. J. at 3–4. I reaffirm those determinations after the Federal Circuit's ruling.

The government, in its new motion for summary judgment, suggested for the first time that even if Section 551.423(a)(3) does not rule out compensation, Plaintiffs cannot recover because they do not meet OPM's general standard for treating after-hours training time as compensable work. Def.'s Mot. at 26 (citing 5 C.F.R. § 551.423(a)(2)). I called for supplemental briefing on whether Plaintiffs have standing. *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) ("The Court of Federal Claims, though an Article I court, ... applies the same standing requirements enforced by other federal courts created under Article III.").

The parties' arguments about compensation ultimately concern the interpretation of OPM's regulations for training time. Plaintiffs' right to compensation for after-hours training time depends on whether they were "directed to participate" in the BFTC and whether the "purpose" of the BFTC was to "improve [their] performance of the duties and responsibilities of [their] current position." 5 C.F.R. § 551.423(a)(2). Although the government argues that Plaintiffs fail that standard, Plaintiffs have their own theory for why they meet it. Pls.' Suppl. Br. at 4–5. If Plaintiffs' interpretation of Sections 551.423(a)(2) and (a)(3) is correct, a money judgment would of course redress their alleged injury. The dispute thus goes to Plaintiffs' ultimate entitlement to compensation under the governing regulation, not to their standing. *See Reoforce, Inc. v. United States*, 853 F.3d 1249, 1264 (Fed. Cir. 2017); *see also United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023); *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87 (2d Cir. 2006).

## II. Merits

The motions for summary judgment raise two questions: (1) Is the Section 551.423(a)(3) bar on compensation for after-hours time in non-productive "entry level training" consistent with FLSA, *see Doe No. 1*, 129 F.4th at 1367; *Billings*, 322 F.3d at 1333–34, and (2) if so, is the BFTC "entry level training" within the regulation's meaning?[6]

---

[6] I do not reach certain other issues. First, the parties present only limited arguments about whether OPM regulations such as Section 551.423(a)(2) allow compensation even if the BFTC is not "entry level" under Section 551.423(a)(3). Because of the limited briefing — and because a factual record would be helpful in determining whether "the purpose of the [BFTC] is to improve [a trainee's] performance of the duties and responsibilities of his or her current position," 5 C.F.R. § 551.423(a)(2) — summary judgment is inappropriate now.

Second, although the government's motion devotes considerable attention to the Government Employees Training Act, 5 U.S.C. § 4101 *et seq.*; *see* Def.'s Mot at 9–10, 12–14, 19; Def.'s Reply at 3–5, counsel conceded at argument that the statute "is not as relevant as maybe the time spent in briefing suggests." Tr. at 36–37. I will address it as necessary on the merits.

Neither question is suited to conclusive resolution now. Factual disputes on the second question preclude summary judgment for either party. The first question is therefore academic, besides the fact that more factual development (and more thorough briefing) might shed light on it and guide the way to a better answer.[7] I therefore conclude that the parties' motions for summary judgment should be denied.

### A. Legal Standard

To prevail on a motion for summary judgment, the moving party must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact must "affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[8] The Court "must … view[] [all evidence] in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

When determining whether a regulation is consistent with the statute it implements, courts must exercise independent judgment and apply "all relevant interpretative tools." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Courts may not defer to an agency's interpretation merely because the statute is ambiguous or the agency's interpretation is "permissible," although they may take the agency's expertise into account to the extent it is persuasive. *Id.* at 402 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), and *Bureau of Alcohol, Tobacco & Firearms v. FRLA*, 464 U.S. 89, 98, n.8 (1983)).

### B. Consistency with FLSA

Whether Section 551.423(a)(3) is consistent with FLSA is really a question of whether its exclusion of certain activities from compensable hours of work — *i.e.*, after-hours, non-productive time in entry-level training — comports with FLSA's standard for when training time must (or need not) be paid.[9] It is questionable whether OPM has regulated consistently with FLSA, and there is no good way to tell without a factual record or additional briefing.

---

[7] The government agreed at argument that if summary judgment were inappropriate on the factual application of the regulation, it would not be necessary to address validity. Tr. at 35.

[8] *Kraft, Inc. v. United States*, 85 F.3d 602, 605 n.6 ("The precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims."), *modified on denial of reh'g*, 96 F.3d 1428 (Fed. Cir. 1996).

[9] The regulation allows compensation for non-productive entry-level training during working hours. Plaintiffs do not argue that that goes to the regulation's validity, and the government contends that OPM can authorize wages beyond what FLSA requires. Tr. at 8. I assume that the issue is immaterial.

Start with the basic question: What does FLSA require? FLSA, standing alone, does not say. In the abstract — looking only at FLSA's text — it could be reasonable to say that non-productive time in entry-level training is not work. But FLSA does not define "work." *See* 29 U.S.C. §§ 201–219; *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014); *Akpeneye v. United States*, 990 F.3d 1373, 1380 (Fed. Cir. 2021). That means turning to caselaw and other sources.

The parties propose that when deciding whether training time is work under FLSA, courts look to whether the trainee or the employer is the "primary beneficiary" of the training activity. Pls.' Mot. at 7–9; Def.'s Mot. at 12; Def.'s Reply at 5–6. The parties derive their test from two sources in the Supreme Court's interpretations of FLSA. One is the definition of "work" originating in *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, *i.e.*, "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 321 U.S. 590, 598 (1944); *see also Akpeneye*, 990 F.3d at 1380 (quoting *Tenn. Coal*, 321 U.S. at 598).[10] The other is *Walling v. Portland Terminal Co.*, which looked to the beneficiary of a training course in holding that railroad trainees were essentially students learning, rather than employees doing work. *See* 330 U.S. 148, 151–53 (1947); *see also Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 520, 529–30 (6th Cir. 2011); *Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1027–29 (10th Cir. 1993); *Donovan v. Am. Airlines, Inc.*, 686 F.2d 267, 272–73 (5th Cir. 1982).

It makes some sense that if *cui bono* distinguishes work from non-work and trainees from employees, it could be used to decide whether employee training time must be treated as work. I assume that is the correct standard against which Section 551.423(a)(3) should be measured.

That only accomplishes so much, though, because the content of the FLSA primary-beneficiary test is potentially unsettled in ways that the parties have not addressed. The parties treat cases addressing different questions — *i.e.*, whether training is work time versus whether trainees are employees — as essentially interchangeable. Some sort of primary-beneficiary inquiry appears relevant in either circumstance. *See Walling*, 330 U.S. at 153 (applying primary-beneficiary test to determine that trainees were not employees); *Tenn. Coal*, 321 U.S. at 598–99 (applying the primary-beneficiary test to existing employees' travel time); *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) (applying the primary-beneficiary test to

[10] That definition has been narrowed by the Portal-to-Portal Act, which excluded "activities" that are "preliminary to or postliminary to" an employee's "principal activity or activities." 29 U.S.C. § 254(a)(2).

existing employees' on-call time). But the context has affected the specifics of the test. For example, some courts determining whether trainees are employees have applied the primary-beneficiary test with the help of a six-part factual inquiry derived from DOL guidance. *Solis*, 642 F.3d at 529; *Reich*, 992 F.2d at 1027; *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1127–28 (5th Cir. 1983) (citing *Donovan*, 686 F.2d 267); *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1005–09 (N.D. Cal. 2010); *but see Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1209 (11th Cir. 2015) (declining to apply the six-part test); *McLaughlin v. Ensley*, 877 F.2d 1207, 1209–10 & n. 2 (4th Cir. 1989).[11]

So what, exactly, does OPM have to conform to? Even if "different courts have adopted different tests" for who is the primary beneficiary, Def.'s Reply at 12, there is no way forward without settling on one. The answer might have been simple if OPM were bound to follow DOL's interpretation of FLSA. But the Federal Circuit's decision on appeal in this case establishes that OPM can chart its own course, provided it acts consistently with the statute itself. *Doe No. 1*, 129 F.4th at 1366. Now that the Circuit has directed the inquiry back to the statute — which, again, does not define "work" — a good answer would likely require a thorough threshold analysis of FLSA's specific substantive requirements in light of judicial and administrative interpretations. The parties have not provided that analysis, nor have they offered a basis for evaluating OPM's regulation for consistency with FLSA without it.

Whatever role the DOL test should play, OPM's regulation is still (at least on the surface) hard to align with FLSA. The six-part test, if it is part of FLSA, looks nothing like OPM's standard in Section 551.423(a)(3). Or suppose instead that the six-part test is purely created by DOL and is not a necessary part of the FLSA primary-beneficiary test. In that situation, all that is needed would be to see if the Section 551.423(a)(3) standard lines up at a high level of generality with FLSA's text and the "primary beneficiary" gloss courts have placed on it. But of course the regulation does not line up, at least not precisely: Whether a training primarily benefits the government or an employee appears conceptually different from whether

[11] The elements of the test are: "(1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school, (2) the training is for the benefit of the trainees, (3) the trainees do not displace regular employees, but work under close observation, (4) the employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded, (5) the trainees are not necessarily entitled to a job at the completion of the training period, and, (6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training." *McLaughlin*, 877 F.2d at 1208 n.1 (citing Wage and Hour Manual (BNA) 91:416 (1975)).

the training is "entry level" and not "productive."[12] If there is entry-level, non-productive training for government employees that primarily benefits the agency that employs them, then the regulation would deny compensation that courts interpret FLSA as requiring.

That leads to more challenges for the government. The easiest way to reconcile the regulation with the judge-made FLSA standard would simply be to define them as coextensive. But their words are different, and interpreting the difference away would risk contradicting one or the other. The government has not yet suggested a smooth way to knit them together.

The risk of contradiction might be small — and the textual difference inconsequential — if, in practice, an employer is never the primary beneficiary of non-productive entry-level training. The government claimed at argument that the employee is "always" the beneficiary of entry-level non-productive training. Tr. at 38. If that were true, then the Section 551.423(a)(3) exclusion would align compensation for government-employee training with the FLSA rules that prevail everywhere else. There is no record, though, that would allow me to rely on the government's generalizations as a factual matter.

Caselaw, furthermore, suggests a more complicated picture. The government cites numerous cases finding that non-productive time in basic job training primarily benefited the employee rather than the employer. Def.'s Reply at 6, 10–13 (citing, *e.g.*, *Walling*, 330 U.S. at 150–53, *Reich,* 992 F.2d at 1027–28, *Donovan*, 686 F.2d at 272, and *Solis*, 642 F.3d at 530). Some cases have held that trainees had to be compensated for time they spent doing the job they were being trained for — that is, for productive time — but not for classroom-type learning. *Bienkowski v. Northeastern Univ.*, 285 F.3d 138, 141 (1st Cir. 2002); *Ballou v. Gen. Elec. Co.*, 433 F.2d 109, 111–12 (1st Cir. 1970); *Chao v. Tradesmen Intern., Inc.*, 310 F.3d 904, 910 (6th Cir. 2002). At least one case, though, holds that entry-level non-productive training *can* primarily benefit the employer, and so be compensable time. *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 660 (4th Cir. 2016) ("*Harbourt I*").

In *Harbourt I*, the Court of Appeals for the Fourth Circuit considered whether prospective casino dealers were entitled to compensation under FLSA for time spent training to operate table games — *i.e.*, learning the basic skills of a basic job. 820 F.3d at 657–58. The trainees did not interact with actual casino clients or operate table

[12] It is doubtful whether OPM could categorically exclude non-productive time from hours of work. FLSA hinges on work, not productivity, at least according to DOL's nonbinding regulations. 29 C.F.R. § 778.318 ("[N]onproductive working hours must be counted and paid for[.]"). So OPM's regulation could be read as hinging either on the concept of "entry level" training — discussed further below — or on the combination in a single training program of non-productive time and entry-level substance.

games for wagering, but the court nonetheless reversed the trial court's dismissal of the complaint because Plaintiffs had sufficiently alleged facts showing that the employer was the primary beneficiary of the training. *Id.* at 660. Although the trainees in *Harbourt* ultimately lost at summary judgment, *Harbourt v. PPE Casino Resorts Md., LLC*, No. CCB-14-3211, 2018 WL 3660167, at *8 (D. Md. Aug. 2, 2018) ("*Harbourt II*"), the case stands for the proposition that entry-level, non-productive work is theoretically compensable, depending on the facts. If that is an accurate statement of the FLSA standard — which I do not decide one way or another — then Section 551.423(a)(3) categorically rules out compensation for government employees who would have to be compensated (or at least have a chance to prove their right to compensation) under FLSA.

To take the cases from another angle, one consideration courts commonly consider relevant to the FLSA primary-beneficiary test is whether a given training program teaches skills specific to the employer or generally applicable in a field. *See Harbourt I*, 820 F.3d at 657, 660; *Reich*, 992 F.2d at 1028; *McLaughlin*, 877 F.2d at 1209–10; *Petroski v. H&R Block Enters., LLC*, 750 F.3d 976, 980–81 (8th Cir. 2014). Just as students are not employees of their schools, employers should not have to pay trainees when they offer basic training. *Walling*, 330 U.S. at 152–53. In *Harbourt*, the employees ultimately lost because the card-dealing skills they were trained in were generic to the gambling industry. *Harbourt II*, 2018 WL 3660167, at *4. But if the information had been specific to the employer, it is more likely that the employer would have been the primary beneficiary of the training. *Compare also McLaughlin*, 877 F.2d at 1210, *with Petroski*, 750 F.3d at 891, *and Donovan*, 686 F.2d at 269, 272. That is because when an employer teaches skills specific to its own operations, the employer might benefit from creating a pool of knowledgeable employees, even if the training itself is basic and not productive. *See Harbourt I*, 820 F.3d at 660; *McLaughlin*, 877 F.2d at 1210.

Yet the text of Section 551.423(a)(3) does not appear to distinguish between "entry level training" courses: It treats all entry-level, non-productive trainings the same, whether they involve industry-wide skills or agency-specific procedures and tools. That is another indication that the regulation asks a question different from the one FLSA requires, and that the difference has practical consequences.

The government has suggested possible solutions. At argument, counsel pointed out that under Section 551.423(a)(2), compensation is required when an agency directs an employee to undergo training "to improve the employee's performance of the duties and responsibilities of his or her current position." Tr. at 5–6. The government suggests that an agency is the primary beneficiary of mandatory training that improves employee performance, but not of entry-level non-

productive work for employees starting new jobs, governed by Section 551.423(a)(3). *Id.* That, once more, conflicts with *Harbourt I*, which suggests that an employer can be the primary beneficiary of basic, non-productive training even when an individual takes a new job.

In the end, the government largely concedes that *Harbourt I* is inconsistent with its position, but should not be followed because it conflicts with Supreme Court authority. Tr. at 39–40. Upholding the regulation, in other words, could mean splitting from at least one circuit's interpretation of FLSA. That may be necessary in the end, but it would be premature to do so without full development of the legal standards or the factual record, especially where (as discussed below) judgment must be denied in any event.

In short, the differences between Section 551.423(a)(3) and the primary-beneficiary standard raise the possibility that the regulation might be inconsistent with FLSA, but the parties have not yet developed the legal standards well enough to tell. In the alternative, it could be that the regulation is valid in most cases but cannot be applied in particular circumstances that depart from FLSA.[13] Either way, it would be easier to determine if there is a practical difference between FLSA and regulatory standards if both standards could be applied to a factual record. Meanwhile, the consistency question — including how to treat the Fourth Circuit's reasoning in *Harbourt I* — could be mooted altogether if facts make clear that the trainees are the primary beneficiaries of the BFTC or otherwise ineligible for relief. Regardless, judgment on the regulation's validity should be denied for now.

### C. Application to the Facts

If Section 551.423(a)(3) is invalid, then the government cannot rely on it as a basis for summary judgment. But now suppose Section 551.423(a)(3) is valid, in which case the question is whether the regulation excludes compensation for the BFTC time at issue. That question also implicates factual issues that cannot be resolved on the parties' summary judgment record, precluding judgment for either party.

The regulation rules out compensation for after-hours time when the training is "entry level" and the activity is "non-productive." 5 C.F.R. § 551.423(a)(3). The parties agree the after-hours aspects of the BFTC are not "productive" in the usual sense. Whatever the exact meaning of the term might be, trainees are not producing actual intelligence analysis for the agency's use. Tr. at 58. So the compensability of Plaintiffs' after-hours time depends on whether the BFTC is "entry level training."

---

[13] The parties have not emphasized that remedial question or whether it would matter here. The government questions whether Plaintiffs have preserved a narrower argument. Tr. at 43.

The parties have not identified any generally applicable legal meaning of "entry level," nor (according to the government) has DOL interpreted the term. Tr. at 14–16, 32, 45–46, 66. The parties have not used linguistic corpora to make an empirical study of what the term means. Tr. at 66–67.[14] That leaves dictionaries, which suggest that in common usage, "entry level" compares a job or training course to other jobs or courses that are more advanced or senior. *See Entry-Level (sense B.2)*, OXFORD ENGLISH DICTIONARY ("Designating a job, academic course, etc., occupying the lowest level in a hierarchy and available to or suitable for people with relatively little experience; of or relating to such a job, course, etc.");[15] *Entry-Level*, MERRIAM WEBSTER ("[O]f or being at the lowest level of a hierarchy");[16] *Entry-Level, adj. (sense 1)*, CAMBRIDGE DICTIONARY ("[A]t or relating to the lowest level of an organization, type of work, etc.").[17]

The regulation's structure points in the same direction. Read as a whole, the regulation rules out compensation for after-hours, non-productive time in "apprenticeship or other entry level training, or internship or other career related work study training," as well as "training under the Veterans Recruitment Act[.]" 5 C.F.R. § 551.423(a)(3). Canons of statutory construction call for interpreting "entry level training" consistently with the other kinds of training mentioned. *See Fischer v. United States*, 603 U.S. 480, 487 (2024) (explaining the canons of *noscitur a sociis* and *ejusdem generis*). Apprenticeships, internships, and work study training all involve learning jobs at lower levels in given fields, so "entry level training" presumably means something similar.

The government argues that the BFTC is entry-level training because it is focused on material that trainees need to start new roles as FBI intelligence analysts. In the government's view, training is entry-level whenever it is for beginners in a given role, no matter how sophisticated the training or the job might be. Def.'s Reply at 14–15. But that understanding is not consistent with the term's usual meaning or its regulatory context, and the government has not provided any legal, linguistic, or

---

[14] Corpus linguistics is an empirical method of analyzing language usage through "large bodies of naturally occurring text." Thomas R. Lee & Stephen C. Mouritsen, *The Corpus and the Critics*, 88 U. Chi. L. Rev. 275, 277 (2021). When the meaning of a term or phrase is disputed, courts can turn to those bodies of text — called "corpora" — to investigate whether and how frequently the term or phrase carries a given proposed meaning. *Id.* at 292; James C. Phillips & Jesse Egbert, *A Corpus Linguistic Analysis of "Foreign Tribunal,"* 108 Va. L. Rev. Online 207, 222 (2022).

[15] *Available at* https://www.oed.com/dictionary/entry-level_n [https://perma.cc/8TXT-K69F] (Nov. 18, 2026).

[16] *Available at* https://www.merriam-webster.com/dictionary/entry-level [https://perma.cc/7ANZ-FK24] (Nov. 18, 2026).

[17] *Available at* https://dictionary.cambridge.org/dictionary/english/entry-level [https://perma.cc/R6EY-A7DA] (Nov. 18, 2026).

lexicographic basis for adopting it. And I am skeptical that any such basis could exist. If the government posits that there could be entry-level training for generals, admirals, federal judges, hospital attendings, and ambassadors, something is off-key. *See* Tr. at 15–16 (discussing "baby judge school").

Sticking with the usual definition of "entry level," the relevant factual questions for applying the regulation might include the substantive content of the BFTC, how the BFTC compares with analogous training courses, what knowledge or experience new intelligence analysts are expected to have before starting the training, the sophistication of the FBI intelligence-analyst position compared to others in the general field, and so forth. The record shows genuine disputes on those questions that cannot be resolved at summary judgment.

First, the parties dispute the kind of background and experience that BFTC trainees are expected to have.[18] The government asserts that the intelligence-analyst position — and by extension, the BFTC training — is open to people with a wide range of educational and professional experiences, at many different levels of work seniority. Def.'s Mot. at 23; Def.'s Reply at 17–18. FBI recruiting materials and the government's declaration say as much. Def.'s Suppl. App. at 9 (ECF 176-2); Def.'s App. at 42; Creasey Decl. ¶ 5. But Plaintiffs question whether it is true *in practice*. Plaintiff Doe, for example, was an experienced FBI employee at the time she entered training. Tr. at 61; Doe No. 1 Decl. ¶ 3. If it turns out that new intelligence analysts consistently have law enforcement experience, or substantial experience or training in some other relevant field, it would be harder to argue that their training for a specific new role in the FBI is "entry level."

Second, the record does not show what the actual content of the BFTC might be. The parties have not provided syllabi, instructional materials, sample assignments, grading standards, or other evidence that would shed light on the question. The government points to graduation requirements and other agency documents, Def.'s Mot. at 3, 31; Def.'s App. at 4–7, but none of the evidence seems to bear directly on the BFTC's content. If the BFTC in fact presumes familiarity with law enforcement or intelligence techniques, that would suggest that it is not entry-level training. The inverse is true as well. The parties' failure to provide evidence leaves the question open.

[18] The parties' briefing contains extensive discussion about the trainees' status as conditional or probational employees. *See, e.g.*, Def.'s Mot. at 3–5, 24–27, 29–30, 32; Pls.' Mot. at 20–21; Def.'s Suppl. Br. at 4–5. The government appears to agree, though, that the trainees' conditional employment does not go directly to whether the job or the training itself is "entry level." Tr. at 28–29, 63.

At most, some FBI documents describe the BFTC as providing "basic" materials needed by new intelligence analysts. Def.'s App. at 4; Creasey Decl. ¶ 15. But it would be wrong to read much into that language, especially on summary judgment when any doubt over factual issues must be resolved in favor of the non-movant. *Oxy USA Inc. v. United States*, 163 Fed. Cl. 75, 86 (2023) (quoting *Jaster v. United States*, 86 Fed. Cl. 731, 733 (2009) (itself citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987))). All positions, regardless of their sophistication or level of responsibility, require knowledge that a new officeholder might have to be informed of or taught. *See* Tr. at 30–31. The fact that aspects of a training could be described as "basic" thus says little about whether the training as a whole is basic or entry-level.[19] Plaintiff Doe, for her part, has declared that the BFTC's content is actually more sophisticated than the government admits. Doe No. 1 Decl. ¶ 11. I cannot resolve the dispute at summary judgment.

Relatedly, the record does not establish the full applicability of the BFTC training. The government says that many of the skills taught are "very specific to government and … can't then be taken either to the private sector or … outside of the context of the FBI." Tr. at 34. That suggests the BFTC creates a pool of employees with knowledge specific to a particular government role, which means the government might be the primary beneficiary. *See Harbourt I*, 820 F.3d at 660; *McLaughlin*, 877 F.2d at 1210. But there might be private sector applications too. Tr. at 34. That, again, is a material factual question that the summary judgment record does not answer.

Because of those factual questions, summary judgment is not appropriate whether the regulation is valid or not.

## CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment (ECF 176 & 178) are **DENIED**. The parties are **ORDERED** to submit a joint status report proposing further proceedings no later than **December 21, 2026**.

Since the initial filing of Plaintiff's complaint (ECF 1), the number of plaintiffs has increased through the filing of notices identifying additional party plaintiffs and providing their consent-to-sue forms. *See* Notices (ECF 8, 88, 94, 96, 100, 102, 104, 106, 108, 110, 112, 114, 116, 118, 120, 122, 124, 126, 128, 130, 132, 134, 136, 138, 140, 142, 145, 148, 150, 152, 154, 156, 158, 160, 162 & 164). One plaintiff has been dismissed from the case. *See* Joint Stipulation of Dismissal (ECF 168). To assist with

[19] An agency declarant's statement, unconnected to specifics about the BFTC's content, is even less helpful. Creasey Decl. ¶¶ 4, 6, 11.

proper case management and party statistics, Plaintiffs are **ORDERED** to file, by **December 4, 2026**, a status report using the CM/ECF event "Status Report (Multiple Plaintiffs Summary)" identifying the following in chart format:

1. Each plaintiff by pseudonym;
2. The date on which the plaintiff was included in the action, including a citation to the court record of such inclusion; and
3. If a plaintiff is no longer a party to the case, the date on which the plaintiff was dismissed, including a citation to the court record.

Plaintiffs are further **ORDERED** to file an updated "Status Report (Multiple Plaintiffs Summary)" **within 7 days of adding or removing any plaintiffs** for the duration of the case.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge